**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

FILED
Apr 14  3 34 PM '04
U.S. DISTRICT COURT
NEW HAVEN, CONN

| | |
|---|---|
| LORRAINE M. CAISSE,<br>Plaintiff | :<br>:<br>: CIV NO. 3:03CV0443 (MRK)<br>: |
| v. | :<br>:<br>: |
| DAY KIMBALL HOSPITAL,<br>Defendant | :<br>: MARCH 17, 2004 |

## SECOND AMENDED COMPLAINT

### Introduction

1.  This is an action to redress the discriminatory conduct suffered by the plaintiff in violation of the Age Discrimination in Employment Act of 1966, 29 U.S.C. Sections 621 *et seq.* ("ADEA") and the Connecticut Fair Employment Practices Act, Connecticut General Statutes §46a-60 et. seq. ("CEFPA").

### Jurisdiction

2.  The court has subject matter jurisdiction over this case as a result of the plaintiff's claims under the ADEA. Supplemental jurisdiction of the court is invoked under the provision of 28 U.S.C. §1367.

3.  The plaintiff has exhausted her administrative remedies. The plaintiff filed a timely complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC") on or about August 20, 2002.

4. More than sixty days have passed since the filing of the ADEA charges with the CHRO and the EEOC. Plaintiff received a Release of Jurisdiction from the CHRO on February 23, 2004.

**The Parties**

5. The plaintiff, Lorraine M. Caisse, is an individual who resides in Putnam, Connecticut.

6. The defendant, Day Kimball Hospital, an acute care community hospital, is a non-stock nonprofit Connecticut corporation with its principal place of business located in Putnam, Connecticut. The defendant is licensed to transact business in the State of Connecticut.

7. The defendant employs more than fifteen employees and meets the definition of employer under the ADEA and CFEPA.

**Background**

8. In or about August of 1989, the plaintiff began working for the defendant as its Manager of Human Resources. In this position, plaintiff responsibilities included the management of various departmental functions such as benefits, pension and wage/salary administration.

9. In the position of Manager of Human Resources, the plaintiff consistently received positive and favorable performance evaluations.

10. In the summer of 1997 the defendant hired Thomas Denton as its Vice-

President of Human Resources. At that same time, the plaintiff began to report to Mr. Denton.

11. In the summer of 1998, the plaintiff was promoted to Director of Human Resources. Said promotion did not include a salary increase but did make plaintiff eligible to earn an annual incentive bonus.

12. In the position of Director of Human Resources, the plaintiff continued to receive positive and favorable performance evaluations, and report to Mr. Denton.

13. During the period between May 9, 2000 and July 10, 2000, the plaintiff took a family and medical leave of approximately eight weeks in order to care for and arrange for the care of her husband, who had suffered a cerebral hemorrhage.

14. Upon returning from the leave, Mr. Denton asked plaintiff if she would be retiring. The plaintiff advised Mr. Denton that she did not plan on retiring and could not afford to do so at the age of 55, and that she had made arrangements for the care of her husband.

15. Upon returning from the leave, the plaintiff also discovered that in her absence Mr. Denton had said to an employee at the Director level that plaintiff should retire. Upon learning of this discussion, plaintiff also explained to the employee that she had no intention of retiring.

16. After the plaintiff returned from her leave, Mr. Denton began promoting a telecommuting position to the plaintiff, a position that would enable the plaintiff to work from her home.

17. In response to Mr. Denton's suggestion, in December 2000 during a three-month trial period, the plaintiff stated that it would work best if she came into the office

3

two days and worked three days out of her home. Mr. Denton insisted that she work all five days from home and come into the office only for meetings. The plaintiff began the telecommuting position on or about January 2, 2001.

18. In the telecommuting position, the plaintiff gave up the title of Director and became Manager again, giving up only the supervisory responsibilities over staff. Mr. Denton assured plaintiff that her responsibilities would otherwise only be minimally affected. The plaintiff understood that the telecommuting position could end at any time should the defendant need the plaintiff to return to the office.

19. Shortly after the plaintiff began the telecommuting position it began clear that Mr. Denton promoted that position in order to remove the plaintiff from the Human Resources Department. For example, shortly after beginning the telecommuting position, Mr. Denton advised the plaintiff that she would not be considered in the future for the position of Director. The plaintiff was shocked by this revelation.

20. After the plaintiff began the telecommuting position, when she attended meetings in the office, Mr. Denton would say things to her like "what are you doing here," making plaintiff feel as though she was no longer a part of the department. In addition, although Mr. Denton had advised the plaintiff that she would continue to have an office to conduct her on site work duties, shortly after beginning the telecommuting position, her office was taken away and she was forced to meet with her clients and work at a desk near a photocopying machine.

21. On January 28, 2001, a month after plaintiff began the telecommuting position, Mr. Denton promoted another individual by the name of Cindy Gaucher, who was approximately eleven years younger than plaintiff, from Manager to Director of

Human Resources. While the plaintiff's promotion to Director did not include a raise, Ms. Gaucher received a $20,000 raise for the promotion. The increase made her nearly equal in pay to Mrs. Caisse despite the fact that she did not have all the qualifications as described in the Director job description that Mrs. Caisse had held. It required a minimum of a Bachelor's degree and Ms. Gaucher, had approximately 30 credits of college and only a "Certificate" in Human Resources.

22.    During September of 2001, the position of Director was eliminated and Ms. Gaucher once again took the title of Manager. However, she did not get a decrease in pay for that demotion.

23.    On or about July 9, 2002, Mr. Denton advised plaintiff that because of a budget deficit, he was reorganizing the Human Resources Department and eliminating the plaintiff's position of Manager and replacing it with a Coordinator position earning a $45,000 per annum salary.

24.    Mr. Denton advised plaintiff that in the Coordinator position, she would be required to do some receptionist work and that she would no longer be responsible for any manager level work. During the plaintiff's thirteen-year tenure with the defendant, she had never been asked to do receptionist work as a part of her job. The Coordinator position would also reduce the plaintiff's annual salary by $33,333.80.

25.    Mr. Denton also stated to plaintiff that Ms. Gaucher would take on plaintiff's manager level duties. This came as a shock to plaintiff since Ms. Gaucher had been demoted to the position of Manager less than a year before the reorganization, and in fact had never done any pension work nor JCAHO reports that go to the Board of Directors and many other aspects of Ms. Caisse's responsibilities.

26. Mr. Denton further advised plaintiff that she could accept the Coordinator position or resign with a six-month severance package.

27. In response to Mr. Denton's offer of the Coordinator position, the plaintiff attempted to explain to him that even with the modifications in duties, the Coordinator position was worth a lot more than $45,000. In response to the plaintiff's comments, Mr. Denton stated something like "he could find someone just starting off who would be happy to get $45,000 for a full time job." He also referred to a new employee named Lynn who was just starting off and she was in her late twenties at the most! It was clear to the plaintiff that he meant a young person.

28. The so-called reorganization did not affect any of the other five employees in the Human Resources Department. Their positions and salaries remained the same under the reorganization. The other employees had less seniority, experience and education in the Human Resources field.

29. At the time of the reorganization, the plaintiff was 57 years of age and the oldest member of the Human Resources Department.

30. At the time of the reorganization, the plaintiff had the most seniority in the Human Resources Department and was more qualified to hold the position of Manager than any other individual in the Department. The defendant's decision to terminate the plaintiff was motivated by a desire to force the plaintiff, an older employee, to retire and discontinue her employment with the Hospital.

31. Unable to endure the humiliating and demeaning actions of the defendant, the plaintiff resigned on or about October 15, 2002.

32.  As of the time of her resignation, the plaintiff had accrued significant personal and disability hours, for which the plaintiff was entitled to be paid by the defendant.

33.  In retaliation for filing her discrimination complaint, the defendant calculated said payment at the salary rate of the Coordinator position, and not her Manager position, even though the majority of the amount owed was accrued during the time when plaintiff was a Director and Manager.

34.  The defendant's refusal to pay plaintiff for the personal and disability hours in accordance with the rate she should have been earning at the time of termination or even at the rate she accrued such hours resulted in significant losses to the plaintiff.

### Count One (ADEA - Discrimination)

1-34.  Paragraphs 1 through 34 above are incorporated herein as paragraphs 1 through 34 of Count One as if fully set forth herein.

35.  By the above acts, the defendant subjected the plaintiff to discrimination based on her age in violation of the ADEA.

36.  The plaintiff has sustained damages as a result of the defendant's discriminatory conduct.

### Count Two (ADEA – Retaliation)

1-34.  Paragraphs 1 through 34 above are incorporated herein as paragraphs 1 through 34 of Count Two as if fully set forth herein.

35.  By the above acts, the defendant retaliated against the plaintiff for making an age discrimination complaint.

7

36. The plaintiff has sustained damages as a result of the defendant's retaliatory conduct.

**Count Three (CFEPA - Discrimination)**

1-34. Paragraphs 1 through 34 above are incorporated herein as paragraphs 1 through 34 of Count Three as if fully set forth herein.

35. By the above acts, the defendant subjected the plaintiff to discrimination based on her age in violation of the Connecticut Fair Employment Practices Act, Connecticut General Statutes §46a-60 et. seq. ("CFEPA").

36. The plaintiff has sustained damages as a result of the defendant's discriminatory conduct.

**Count Four (CFEPA – Retaliation)**

1-34. Paragraphs 1 through 34 above are incorporated herein as paragraphs 1 through 34 of Count Four as if fully set forth herein.

35. By the above acts, the defendant retaliated against the plaintiff for making an age discrimination complaint in violation of the Connecticut Fair Employment Practices Act, Connecticut General Statutes §46a-60 et. seq. ("CFEPA").

WHEREFORE, Plaintiff claims judgment against Defendant as follows:

1. Back pay in an amount to be determined by the trier of fact with interest from the date said sums were due;

2. Reinstatement or front pay in an amount to be determined by the trier of fact with interest from the date said sums were due;

3. Loss of benefits, including pension pay;

4. Compensatory damages in an amount to be determined by the trier of fact;

5. Punitive damages in an amount to be determined by the trier of fact;

6. Attorneys' fees and costs of this action;

7. Emotional distress and loss of enjoyment of life damages in an amount to be determined by the trier of fact; and

8. Such other further relief as this Court deems necessary and proper.

PLAINTIFF,
Lorraine M. Caisse

By: _____
Jacques J. Parenteau
Juris No.: 09771
MADSEN, PRESTLEY & PARENTEAU, LLC
111 Huntington Street
P.O. Box 1631
New London, CT 06320
(860) 442-2466
Attorneys for the Plaintiff

9

## CERTIFICATION

      I hereby certify that a copy of the foregoing was mailed to the following counsel of record on this 17th day of March, 2004:

Hugh F. Murray, III
Murtha Cullina, LLP
CityPlace I
185 Asylum Street
Hartford, CT 06103


_____
Jacques J. Parenteau